MARIA FRANCISCA O'REILLY DE CAMARA, COUNTESS
OF BUENA VISTA, v. BROOKE, MAJOR GENERAL,
U. S. A.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 104.   Argued February 28, March 2, 1908.—Decided March 16, 1908.

A tort can be ratified so as to make an act done in the course of the princi-
pal's business and purporting to be done in his name, his tort; and the
rule of exonerating the servant when the master assumes liability is still
applicable to a greater or less extent when the master is the sovereign.
*The Paquette Habana*, 189 U. S. 453, 469.

By virtue of an order of the Secretary of War and also by the Platt amend-
ment of the act of March 2, 1901, c. 803, 31 Stat. 897, and the treaty
with Cuba of May 22, 1903, 33 Stat. 2249, the acts of the officers of the
United States, during the military occupation of Cuba, complained of
in this action, were ratified by the United States, and those officers re-
lieved of liability therefor.

The courts will not declare an act to be a tort in violation of the law of
nations or of a treaty of the United States when the Executive, Congress
and the treaty-making power have all adopted it.

The holder of a heritable office in Cuba which had been abolished prior to
the extinction of Spanish sovereignty, but who, pending compensation
for its condemnation, was receiving the emoluments of one of the grants
of the office, *held* in this case to have no property rights that survived
the extinction of such sovereignty.

142 Fed. Rep. 858, affirmed.

THE facts are stated in the opinion.

*Mr. Frederic R. Coudert*, with whom *Mr. Paul Fuller, Mr.*

*Crammond Kennedy* and *Mr. Howard Thayer Kingsbury* were on the brief, for plaintiff in error:

Neither the order of the Secretary of War, nor the "Platt Amendment" was a ratification by the United States of the tortious act of General Brooke.

Neither does the Secretary of War possess any such inherent and plenary powers as to make his order equivalent to a ratification by the United States of a tortious conversion of private property, committed by an army officer in time of peace. The United States Government has expressly recognized that "executive action by the War Department . . . is not due process of law." 22 Ops. Atty. Gen. 518.

General Brooke's order was not, even in terms, included in the ratification of the Platt Amendment. By the express limitation of that statute to "lawful rights" acquired under the acts of the American administration of Cuban affairs, it clearly recognized that rights might be claimed thereunder which would not be lawful, and these it did not attempt to ratify. It did not purport to deal with a particular act of a military officer transferring something belonging to *A*. over to *B*.

In any event, General Brooke is individually liable for his tortious act, irrespective of governmental direction or ratification. *Little* v. *Bareme*, 2 Cranch, 170. And see *The Charming Betsy*, 2 Cranch, 64; *Shattuck* v. *Maley*, 3 Cranch, 458; *Mitchell* v. *Harmony*, 13 How. 115; *Grisar* v. *McDowell*, 6 Wall. 363; *Cammeyer* v. *Newton*, 94 U. S. 225; *Bates* v. *Clark*, 95 U. S. 204; *Kilbourne* v. *Thompson*, 103 U. S. 168; *United States* v. *Lee*, 106 U. S. 196; *Virginia Coupon Cases*, 114 U. S. 269; *In re Ayers*, 123 U. S. 443; *Magahey* v. *Virginia*, 135 U. S. 662; *Belknap* v. *Schild*, 161 U. S. 10.

General Brooke's act was a trespass upon plaintiff's property rights and she was entitled to judgment.

The case having been tried by the court without a jury, by waiver, the decision of the trial judge is conclusive and equivalent to the verdict of a jury. *Oleomargarine Cases*, 195 U. S. 30,

65, 159. It is therefore not open to dispute in this court that under the law of Spain, which continued in force in Cuba during the American occupation, plaintiff's franchise was a property right which survived the withdrawal of the Spanish sovereignty, that she performed her duty to keep the slaughter-house clean and wholesome; that any nuisance resulting from the discharge of offal from the slaughter-house into slaughter-house creek had been abated prior to General Brooke's order, and that his order was not a valid exercise of the police power. It must have been, therefore, an arbitrary confiscation, and the fact that his motives may have been subjectively meritorious does not justify the trespass. Upon these facts the District Court should have held—and upon the demurrer necessarily and properly did hold—that defendant was liable.

It is immaterial that the plaintiff may have an additional right of action on contract against the United States or any other party.

Where officers of the Government tortiously take property for Government uses, the Government may, by recognizing the property taken as private property, become liable on an implied contract to pay for it, but the plaintiff could only avail herself of such right of action by waiving the individual tort. *United States* v. *Great Falls Mfg. Co.*, 112 U. S. 645. This she is under no obligation to do.

*Mr. Assistant Attorney General Russell* for defendant in error:

Whether a public office is an alienable office or periodically elective or appointive, it is everywhere and in all cases a part of the sovereign authority or a vehicle for such authority and cannot survive when the sovereignty departs or is extinguished, and the termination of Spain's sovereignty as a result of war put an end to this office long before General Ludlow or General Brooke issued any order about it.

That termination took place prior to or at the ratification of the treaty of peace.

Upon the face of the laws and decrees found by the judge as

facts and notwithstanding his interpretation of them, we say that "the emoluments" of the office, if the office had been pared down to "the emoluments," did not cease to be "emoluments" of an "office,"—emoluments to be collected by virtue of the sovereign authority of which the whole office was a part or a vehicle. No part of the office and no fee or tax collected by virtue of holding it or having held it could survive the sovereignty which had created and maintained the office and lent the sovereign power to support the tax or fee.

Such an office or privilege was not such "property" as was to be protected under the terms of the treaty with Spain.

Supervision of slaughter-houses and prescribing regulations for their conduct and the disposition of their refuse is a police power inherent in all governments. *Slaughter-house Cases,* 16 Wall. 61, 62, and 63 and see *L'Hote* v. *New Orleans,* 177 U. S. 598; *Stone* v. *Mississippi,* 101 U. S. 816; *Mugler* v. *Kansas,* 123 U. S. 669; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 668; *Dobbins* v. *Los Angeles,* 195 U. S. 223, 238.

The rule stated in *Dobbins* v. *Los Angeles,* 195 U. S. 223, 235, relative to municipal action applies to the action of General Brooke in this case.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a writ of error to review a judgment of the District Court dismissing a complaint purporting to be brought under Rev. Stat. § 563, the sixteenth clause of which gives the District Courts jurisdiction "of all suits brought by any alien for a tort 'only' in violation of the law of nations, or of a treaty of the United States." 142 Fed. Rep. 858. See 135 Fed. Rep. 384. The plaintiff is a Spanish subject and alleges a title by descent to the right to carry on the slaughter of cattle in the city of Havana and to receive compensation for the same. (She does not allege title to the slaughter-house where the slaughtering was done. That belonged to the city.) According to the complaint the right was incident to an inheritable and alienable

office; that of Alguacil Mayor or High Sheriff of Havana. The office was abolished in 1878, subject to provisions that continued the emoluments until the incumbent should be paid. The plaintiff has not been paid, and in 1895 one-half of the emoluments was sold on execution by consent, the other half remaining to the plaintiff or those whom she represents. On May 20, 1899, the Island of Cuba being under the military jurisdiction of the United States, Brigadier General Ludlow, then governor of Havana, issued an order that the grant in connection with the service of the city slaughter-house, of which the O'Reilly family and its grantees were the beneficiaries, was ended and declared void, and that thenceforth the city should make provision for such services. The owners were referred to the courts and it was decreed that the order should go into effect on the first of June. In pursuance of the same, it is alleged, the plaintiff was deprived of her property. She appealed to the defendant, then military governor of Cuba. On August 10 he issued an order, reciting the appeal, and stating that, it being considered prejudicial to the general welfare of Havana, etc., and in view of the cessation of Spanish sovereignty, the office of Alguacil Mayor de la Habana, together with all rights pertaining thereto or derived therefrom, was thereby abolished, and the right of claimants to the office or emoluments was denied. The city thereafter was to perform the services. It is alleged that by this action the plaintiff was prevented, and to this day has been prevented, from carrying out the duties and receiving the emoluments mentioned above. The complaint ends by alleging violation of the Treaty of December 10, 1898, 30 Stat. 1754, and of General Orders No. 101, of July 18, 1898, issued by the President through the Secretary of War. It also sets up the Constitution of the United States and the Spanish law in force before the Island was ceded by Spain.

The answer denies the plaintiff's right, but admits the passage of the order, and sets up a ratification by the United States in the so-called Platt Amendment of the act of March 2, 1901, c.

803, 31 Stat. 897, to the effect that "all acts of the United States in Cuba during its military occupancy thereof are ratified and validated, and all lawful rights acquired thereunder shall be maintained and protected," afterwards embodied in the Treaty with Cuba of May 22, 1903. 33 Stat. 2249. The district judge made a finding of facts, substantially supporting the allegations of the bill, which it is not necessary to set forth in detail, but stating one further public fact that should be mentioned. The plaintiff appealed to the Secretary of War to have General Brooke's order revoked. In answer, Mr. Secretary Root denied that the rights attached to the office of Sheriff of Havana survived the sovereignty of Spain, observed that the services in question were in substance an exercise of the police power of the State, that the right to exercise that power under Spanish authority ended when Spanish sovereignty in Cuba ended, and that the petitioner had been deprived of no property whatever. In December, 1900, the United States ratified and adopted the action of General Brooke through an order of the Secretary of War, and again by the act of Congress just mentioned and the Treaty of 1903. The judge was of opinion that, although there was a public nuisance in the slaughter-house creek, General Brooke's order was not justified under the police power, but that by the ratification of the United States the plaintiff lost any claim against him. The judge intimated, however, that she had a just one against the United States under the Treaty with Spain.

We are so clearly of opinion that the complaint must be dismissed that we shall not do more than mention some technical difficulties that would have to be discussed before the plaintiff could succeed. In assuming that General Brooke's order permanently deprived the plaintiff of her rights, although they were attached to no tangible thing, and although General Brooke long since has ceased to be Governor of Cuba or to have any power in the premises, the plaintiff necessarily assumes that her rights follow the ancient conception of an office and are an incorporeal hereditament, susceptible of disseisin. 3

Kent, 454; Stat. Westm. II, c. 25; 2 Co. Inst. 412; U. S. Rev. Stat. § 563, cl. 13. If we are to apply that conception to the case, we are led to ask why the disseisin was not complete, upon the allegations of the complaint, before General Brooke had anything to do with the matter, or why the brief period during which his authority intervened should make him answerable not only for what had happened before, but also for the continued exclusion of the plaintiff by the United States and by the government of Cuba. But it is very hard to admit that the notion of a disseisin can be applied for the present purpose to such disembodied rights any more than to copyrights or patents; and, if not, then all that General Brooke could be held for, if for anything, would be damages for the disturbances of the plaintiff while he was in power, which are not the object of this suit. It becomes impossible to go further than that when it is remembered that the United States asserted no permanent sovereignty over Cuba, and that, as General Brooke could not carry the office with him, his interference must have lost all legal effect in a very short time.

Again, if the plaintiff lost her rights once for all by General Brooke's order, and so was disseised, it would be a question to be considered whether a disseisin was a tort within the meaning of Rev. Stat. § 563 (16). In any event, the question hardly can be avoided whether the supposed tort is "a tort only in violation of the law of nations" or of the Treaty with Spain. In this court the plaintiff seems to place more reliance upon the suggestion that her rights were of so fundamental a nature that they could not be displaced, even if Congress and the Executive should unite in the effort. It is not necessary to say more about that contention than that it is not the ground on which the jurisdiction of the District Court was invoked.

Coming one step further down, we are met by an argument on the part of the defendant that the only things that we can consider are the pleadings and the judgment dismissing the complaint. It is urged with great force that the decision denying the power of a circuit judge to find and report facts for the

consideration of this court upon a writ of error, *Campbell* v. *Boyreau*, 21 How. 223, although met as to the Circuit Court by Rev. Stat. §§ 649, 700, still applies to the District Courts. *Rogers* v. *United States*, 141 U. S. 548. However, if we assume this argument to be correct, there still perhaps may be gathered from the pleadings, coupled with matters of general knowledge, enough to present the questions which the plaintiff was entitled to present below, and therefore we proceed to dispose of the case upon the merits.

It is said that neither the Executive nor Congress could have taken the plaintiff's property, and that therefore they could not ratify the act of General Brooke so as to make his act that of the United States and to exonerate him. But it has been held that a tort could be ratified so far as to make an act done in the course of the principal's business, and purporting to be done in his name, his tort, *Dempsey* v. *Chambers*, 154 Massachusetts, 330; and it may be assumed that this is the law as to the wrongful appropriation of property which the principal retains, *ibid.* 332, and cases cited. The old law, which sometimes at least was thought to hold the servant exonerated when the master assumed liability [1 Roll. Abr. 2, pl. 7; 95 (T.) ; *Cremer* v. *Tookley's Case*, Godbolt, 385, 389; *Laicock's Case*, Latch, 187; *Anon.*, 1 Mod. 209], still is applied to a greater or less extent when the master is the sovereign. *The Paquete Habana*, 189 U. S. 453, 465. It is not necessary to consider what limits there may be to the doctrine, for we think it plain that where, as here, the jurisdiction of the case depends upon the establishment of a "tort only in violation of the law of nations, or of a treaty of the United States," it is impossible for the courts to declare an act a tort of that kind when the Executive, Congress and the treaty-making power all have adopted the act. We see no reason to doubt that the ratification extended to the conduct of General Brooke.

But we do not dwell longer upon the ratification of what was done during the military occupation of Cuba, or consider the question whether the ratification was needed, because we agree

with the opinion of the Secretary of War that the plaintiff had no property that survived the extinction of the sovereignty of Spain. The emoluments to which she claims a right were merely the incident of an office, and were left in her hands only until the proceedings for condemnation of the office should be completed and she should be paid. The right to the office was the foundation of the right to the emoluments. Whether the office was or was not extinguished in the sense that it no longer could be exercised, the right remained so far that it was to be paid for, and if it had been paid for the right to the emoluments would have ceased. If the right to the office or to compensation for the loss of it was extinguished, all the plaintiff's rights were at an end. No ground is disclosed in the bill for treating the right to slaughter cattle as having become a hereditament independent of its source. But of course the right to the office or to be paid for it did not exist as against the United States Government, and unless it did the plaintiff's case is at an end.

*Judgment affirmed.*