**KHEDIVIAL LINE, S.A.E., Plaintiff-Appellant,**

v.

**SEAFARERS' INTERNATIONAL UNION, International Longshoremen's Association et al., Defendants-Appellees.**

No. 348, Docket 26242.

United States Court of Appeals Second Circuit.

Argued April 27, 1960.

Decided May 4, 1960.

Joseph K. Grainger, New York City (John R. Sheneman, Foley & Grainger, Zock, Petrie, Sheneman & Reid, New York City, on the brief), for plaintiff-appellant.

Seymour Miller, New York City (Miller & Seeger, New York City, on the brief), for defendant-appellee Seafarers' International Union.

Martin Markson, New York City (Waldman & Waldman, New York City, on the brief), for defendant-appellees International Longshoremen's Ass'n and Thomas W. Gleason.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

## PER CURIAM.

Plaintiff is a corporation organized under the laws of the United Arab Republic. It is the owner and operator of the S.S. Cleopatra, a cargo vessel flying that Republic's flag. Its complaint, entitled in a civil action, alleges that the Cleopatra having docked at Pier 16, East River, on April 13, 1960, in New York Harbor, defendant Seafarers' International Union placed a picket line in the vicinity of the vessel and induced defendant International Longshoremen's Association to picket her and to instruct said defendant's members, who would normally discharge and load her cargo, to refuse to work. The basis of the picketing was a pamphlet, signed by both unions, bearing the legend "We Protest Nasser's Blacklist of American Ships." The complaint alleged that by reason of the picket line and defendants' activities, combination and conspiracy, the Cleopatra had been unable to discharge or load cargo, to plaintiff's irreparable damage and sought an injunction and damages.

Plaintiff applied for a temporary injunction against the picketing. Plaintiff's affidavits supported the allegations of the complaint; the Seafarers' Union submitted an affidavit claiming that 125 American vessels having contracts with the Union, representing 5,000 jobs, had been boycotted at United Arab ports for having traded with Israel. Judge Murphy denied the injunction as prohibited by the Norris-LaGuardia Act, 29 U.S.C.A. §§ 101–115, which, as here material, forbids a "court of the United States * * * to issue any * * * injunction in a case involving or growing out of a labor dispute * * *," as the Act has recently been construed by the Supreme Court in Marine Cooks & Stewards v. Panama Steamship Company, Ltd., 1960, 362 U.S. 365, 80 S.Ct. 779, 4 L.Ed.2d 797.

In our view plaintiff's application for an injunction did not come within the Norris-LaGuardia Act's prohibition on a federal court's issuing an injunction in a "labor dispute." However, we affirm the denial of an injunction on the broader basis that, Norris-LaGuardia apart, the complaint asserts no ground on which an injunction may lawfully be issued by a federal court, confined as federal courts are by the historic limitations on the powers of the admiralty and the jurisdictional grants made by Congress under Article III of the Constitution.

The ban of the Norris-LaGuardia Act upon the issuance of injunctions by a court of the United States applies to any case "involving or growing out of a labor dispute," 29 U.S.C.A. § 101. Section 13 of the Act, 29 U.S.C.A. § 113(c), defines "labor dispute" broadly to include "any controversy concerning terms or conditions of employment * * * regardless of whether or not the disputants stand in the proximate relation of employer and employee." In Marine Cooks v. Panama Steamship Co., supra, the Supreme Court held the prohibition of the Norris-LaGuardia Act to apply to the picketing of a Liberian vessel by

an American union concerned over the effect of foreign flags of convenience on the wages and working conditions of American seamen. The District Judge thought that decision determinative here.

■ We disagree. In some respects, to be sure, the cases are parallel. In both, American unions were picketing foreign registered vessels employing alien seamen, and there was no dispute either between the unions and the employers of their members or between the alien seamen and their employers. There, however, the similarity ends. In the Marine Cooks case the foreign shipowner was one of the persons alleged to be creating the substandard wages and working conditions against which defendants were protesting. Here, on the papers before the District Court, the shipowner was not the cause of the picketers' grievance. The basis for the picketing, as stated in the leaflet annexed to the complaint, was that the United Arab Republic "has placed many American-flag vessels, owned by Americans and manned by American seamen, on a blacklist * * * because, at some time, these ships have carried a cargo to or from Israel, or may have stopped at an Israeli port for fuel or food," and therefore had cost some American seamen jobs and caused others to be "abused, mistreated or restricted to their vessels." Accepting *arguendo* defendants' contention that a controversy over the loss of jobs is one "concerning terms or conditions of employment," see Order of Railroad Telegraphers v. Chicago and North Western R. Co., 1960, 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774, whatever had been done here was the United Arab Republic's doing, not plaintiff's. For we accept, at least for present purposes, the statement of the Counselor of the Embassy of the U. A. R. "that the Government of the United Arab Republic does not own, directly or indirectly, the corporation known as the Khedivial Mail Line, S.A.E., owner of the S.S. Cleopatra"; and defendants' leaflet itself states "We have no complaint against the ship."

We do not believe the prohibition of the Norris-LaGuardia Act against the grant of injunctions in "a labor dispute" extends to picketing directed against policies of the government of the owner of a vessel as distinguished from activities of the owner. Broad as the Act's definition of "labor dispute" is, it is not broad enough to encompass that.

However, plaintiff's case fails upon a ground older and more fundamental than the Norris-LaGuardia Act, namely, that the complaint does not state a claim that would warrant the grant of an injunction by a federal court. The complaint does not allege diversity of citizenship. Three bases of federal jurisdiction are asserted: *first,* that the complaint sets forth a claim under the antitrust laws and is thus within 28 U.S.C. §§ 1331 and 1337; *second,* that the complaint states a claim for a tort committed in violation of the law of nations within 28 U.S.C. § 1350; and, *third,* that the complaint alleges a maritime tort, 28 U.S.C. § 1333. These we shall now examine.

■ The complaint does not set forth a substantial claim under the antitrust laws. While union activities are not excluded from the coverage of the antitrust laws, see Allen-Bradley Co. v. Local No. 3, 1945, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939; Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 and Hunt v. Crumboch, 1945, 325 U.S. 821, 65 S.Ct. 1545, 89 L.Ed. 1954, make it plain that, quite apart from § 20 of the Clayton Act, 29 U.S.C.A. § 52, the antitrust laws do not reach possibly tortious activities by labor organizations which are not shown to have or to be intended to have an effect upon competition or prices. See Mr. Justice Stone's opinion in the Apex case 310 U.S. at pages 495, 501, 506 and 512, 60 S.Ct. at pages 993, 996, 999 and 1002. The complaint does not allege that defendants' acts had or were intended to have such an effect.

■ Section 1350 of Title 28 gives the District Courts "original jurisdiction of any civil action by an alien for a tort

only, committed in violaion of the law of nations or a treaty of the United States." Despite the age of this section authorities applying it are scant. The only case we have found in which jurisdiction was sustained on the basis of this section even in part, in that instance an alleged violation of a treaty, is Bolchos v. Darrel, D.C.S.C.1795, 3 Fed.Cas. No. 1,607, p. 810. See also 26 Op.Atty. Gen. 250 (1907). O'Reilly De Camara v. Brooke, 1908, 209 U.S. 45, 28 S.Ct. 439, 52 L.Ed. 676 perhaps implies that an unjustified seizure of an alien's property in a foreign country by a United States officer would come within it. Plaintiff concedes there is no treaty between the United States and the United Arab Republic granting the latter's vessels free access to United States ports. Plaintiff has presented no precedents or arguments to show either that the law of nations accords an unrestricted right of access to harbors by vessels of all nations[1] or that, if it does, this is a right of the foreign national rather than solely of the nation. See Filhiol v. Maurice, 1902, 185 U.S. 108, 22 S.Ct. 560, 46 L.Ed. 827. In any event the law of nations would not require more than comity to the ships of a foreign nation, and here the very cause of the picketing is a harassment of American shipping and seamen by the United Arab Republic that is not denied.

We come therefore to appellant's claim that a federal court may properly issue an injunction because the complaint alleges a maritime tort. We assume in appellant's favor, without deciding, that picketing which prevents a vessel's being unloaded when the owner is powerless to take action that will end the picketing, is a tort, see American Law Institute, Restatement of Torts, § 777, and also that although the actions of the unions took place on land, the tort is maritime since its effect was felt on the navigable waters of New York harbor where the cargo continued to be held on the Cleopatra. See Judge Learned Hand's statement in The Poznan, D.C. S.D.N.Y.1921, 276 F. 418, 433. Cf. The Plymouth, 1866, 3 Wall. 20, 70 U.S. 20, 34–35, 18 L.Ed. 125; Clinton v. International Organization of Masters, Mates and Pilots, 9 Cir., 1958, 254 F.2d 370, 372.

However, while this would support jurisdiction in admiralty under 28 U.S.C. § 1333, and, if plaintiff makes out its case, a future award of damages, it would not warrant the grant of an injunction under the admiralty power For historical reasons admirably set forth in Marine Cooks & Stewards v. Panama Steamship Company, 9 Cir. 1959, 265 F.2d 780, admiralty cannot give injunctive relief. Schoenamsgruber v. Hamburg-American Line, 1935, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989; Sound Marine & Machine Corp. v. Westchester County, 2 Cir., 1938, 100 F.2d 360, 363, certiorari denied, 306 U.S. 642, 59 S.Ct. 582, 83 L.Ed. 1042. However, appellant insists that if a maritime tort requires equitable relief which the admiralty cannot give, a federal court may grant an injunction under the jurisdiction conferred by 28 U.S.C. § 1331 over civil actions arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331. This is what the Ninth Circuit held in the Marine Cooks case, which the Supreme Court reversed on the basis of the Norris-LaGuardia Act without passing on this aspect of the decision, see fn. 5 of the Supreme Court's opinion.

---

1. International law recognizes a right of innocent passage through the territorial sea. However, the access of foreign vessels to ports is usually provided for in a treaty of friendship, commerce and navigation, see, e. g., the treaty of February 2, 1948 between the United States and Italy, 63 Stat. 2256, 2284. A Convention and Statute respecting the International Regime of Maritime Ports, signed at Geneva on December 9, 1923, provides that on a basis of reciprocity the vessels of the contracting parties shall enjoy equality of treatment in, and freedom of access to, their maritime ports, see Oppenheim, International Law, 8th ed., Vol. 1, p. 504; but the United States is not a party to this Convention.

■ Decision on this issue is controlled by Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368. The rationale of that case, as we read it, is that when a seaman suing in a federal court for personal injury alleges a substantial claim only under the general maritime law as distinguished from a federal statute, he may have only such remedies as the maritime law affords. The Court overruled a contention that when Congress, in 1875, for the first time conferred on the District Courts jurisdiction "of all suits of a civil nature at common law or in equity, * * * arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority." 18 Stat. 470, now 28 U.S.C. § 1331, the jurisdiction so granted in actions at law and suits in equity included cases where the only federal law under which a substantial claim was asserted was the general maritime law. In other words, a tort under the general maritime law is not cognizable by a federal court under 28 U.S.C. § 1331 but only under 28 U.S.C. § 1333; consequently, a plaintiff alleging only a claim for tort under the general maritime law may have from a federal court such remedies as admiralty can give and no others. We cannot follow what we understand to be the reasoning of the Ninth Circuit in Marine Cooks, namely, that because admiralty was always powerless to grant an injunction, a proposition that we fully accept, an equitable remedy for a maritime tort therefore would be within the grant of 28 U.S. C. § 1331. It is true that the gap in admiralty jurisdiction here involved may be more important than was that in Romero —jury trial of a personal injury claim on the law side and trial to a judge in admiralty may both result in an award of money damages—whereas here admiralty may award damages only and not an injunction. But we find nothing in Romero to justify reading "under the Constitution, laws or treaties of the United States" in 28 U.S.C. § 1331 to include the general maritime law in cases where admiralty is not competent to give the remedy the plaintiff seeks. The holding was rather that (358 U.S. at page 378, 79 S. Ct. at page 483) "When we apply to the statute, and to the clauses of Article III from which it is derived, commonsensical and lawyer-like modes of construction, and the evidence of history and logic, it becomes clear that the words of that statute do not extend, and could not reasonably be interpreted to extend, to cases of admiralty and maritime jurisdiction." We thus agree with the comment on the Ninth Circuit's decision in 73 Harv.L.Rev. at 141 (1959) that "properly interpreted, Romero makes unavailable an equitable action in a federal court to enjoin the commission of a maritime tort," and the similar view taken in 69 Yale L.J. 498, 527–528 (1960). See also Currie, The Silver Oar and All That, 27 U. of Chi.L.Rev. 1, 59 (1959). We need not consider whether if plaintiff had alleged a substantial and sufficiently related federal claim, the District Court could issue an injunction in aid of plaintiff's claim of maritime tort under the pendent jurisdiction doctrine, see 358 U.S. at pages 380–381, 79 S.Ct. at pages 484, 485; for here no other substantial federal claim was asserted.

It follows that whatever rights plaintiff may have to recover damages in a federal court if its complaint, although entitled as a civil action, is treated as a libel in admiralty, and whatever rights it may have to injunctive relief or damages in a suit brought in a state court, plaintiff has presented no basis on which a federal court may lawfully issue an injunction. To the layman, and doubtless to some lawyers also, it will be hard to understand that decision of a controversy of this public importance should turn on considerations of federal jurisdiction which may appear dry and technical. But it was plaintiff who chose to bring its action in a federal court. Such courts must stay within the bounds placed upon them by Congress.

Judgment affirmed.