NYON TECHNICAL COMMERCIAL,
INC. and Howard C. Riley

v.

EQUITABLE EQUIPMENT COM-
PANY, Inc.

Civ. A. No. 71–1975.

United States District Court,
E. D. Louisiana.

May 9, 1972.

Alfred M. Farrell, Jr., and M. D. Yager, Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for plaintiffs.

Charles E. Lugenbuhl, and Maurice C. Hebert, Jr., Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Robert E. Winn, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, La., for defendant.

## ORDER

JACK M. GORDON, District Judge:

This matter came before the Court on the Motion of Equitable Equipment Company, Inc., defendant-counterclaimant (hereinafter referred to as "Equipment"), for the issuance of a preliminary mandatory injunction. By agreement of the parties the Court ordered consolidation of the hearing on the motion for a preliminary injunction with the trial on the merits of the permanent injunction, and the issue has been presented for adjudication in that posture.

In July of 1971 Nyon Technical Commercial, Inc., co-plaintiff (hereinafter referred to as "Nyon"), through its agent, Howard C. Riley, co-plaintiff (hereinafter referred to as "Riley"), contracted with Equipment to have certain repairs made on Nyon's vessel, the M/V PUERTO DEL SOL (hereinafter referred to as "The Puerto"). A fire broke out in the vessel while it was alongside Equipment's wharf. The vessel was sunk and then raised by Nyon and its agent, Riley, with the assistance of Equipment. All that remained, however, was a burned out hulk which has been tied alongside Equipment's wharf ever since.

Nyon instituted this action against Equipment for damages attributable to the destruction of the vessel, alleging that Equipment was responsible for the fire. In its answer Equipment denied these allegations and advanced the affirmative defense that the cause of the fire was the unseaworthiness of The Puerto. In addition, Equipment counterclaimed, demanding payment on its contract of repair, payment for the services it performed in raising The Puerto, and monetary damages for the loss of wharf space as a result of the burned out hulk remaining alongside the wharf. Equipment subsequently filed a motion for a mandatory injunction seeking an order compelling Nyon and its Agent, Riley, to remove the hulk of The Puerto.

There is a threshold question which must be resolved before the merits of the motion for a mandatory injunction can be determined. That question is whether the Court, where jurisdiction is solely in admiralty, has the power to issue such an injunction.

In this regard Equipment asserts that there are two bases for the Court's jurisdiction over its claim for injunctive relief; (i) pendent jurisdiction, and (ii) ancillary jurisdiction. It first argues that the Court's pendent jurisdiction should be invoked over the equitable injunctive demand because it arises out of the same operative facts as the maritime claims. Secondly, it is urged that the Court has ancillary jurisdiction over the claim for equitable relief as a result of the merger of admiralty and civil rules of procedure in 1966, because Rule 13 extended the right to counterclaim to admiralty cases.

Nyon, on the other hand, argues that admiralty law does not provide for equitable injunctive relief, and that since the Court's jurisdiction here rests solely in admiralty, the Court does not have the power to grant the equitable relief sought.

■ It is the opinion of this Court that it does not have the power to grant the injunction sought by Equipment.

■ The cause of action which gives rise to the circumstances which are sought to be remedied by injunctive relief, that is, the claim that Nyon's vessel is trespassing on Equipment's wharf, is a maritime tort. Sound Marine & Machine Corporation v. Westchester County, 100 F.2d 360 (2nd Cir. 1938), cert. denied, 306 U.S. 642, 59 S.Ct. 582, 83 L. Ed. 1042 (1939); Admiralty Jurisdic-

tion Extension Act, 46 U.S.C. § 740 (1948); Empire Seafoods, Inc. v. Anderson, 398 F.2d 204 (5th Cir. 1968), cert. denied, 393 U.S. 983, 89 S.Ct. 449, 21 L.Ed.2d 444 (1968). The burned out ship is in navigable waters alongside Equipment's wharf, and, as such, is preventing Equipment from the use of the navigable water alongside its wharf. The cause of action, being a maritime tort, is cognizable in this Court by means of the Court's admiralty jurisdiction. The other claims raised by the pleadings are also maritime in nature inasmuch as they arise out of maritime contracts.

The traditional rule in admiralty has been that there is no power to grant equitable relief in a direct proceeding for that purpose. Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989 (1935). There is, however, language to the effect that admiralty applies equitable principles. Watts v. Camors, 115 U.S. 353, 6 S.Ct. 91, 29 L.Ed. 406 (1885). Notwithstanding such language, the distinction between the application of equitable principles and the power to afford equitable relief has long been recognized. The Supreme Court in The Eclipse, 135 U.S. 599, 10 S.Ct. 873, 34 L.Ed. 269 (1890) said that: "While the court of admiralty exercises its jurisdiction upon equitable principles, it has not the characteristic powers of a court of equity." 135 U.S. at 608. See also, United States v. Cornell Steamboat Company, 202 U.S. 184, 26 S.Ct. 648, 50 L. Ed. 987 (1906) and G. H. Robinson, Handbook of Admiralty Law in the United States, 193 (1939).

Equipment, while conceding that the injunction may not lie as an independent admiralty action, suggests that the posture of this case causes the Court to have pendent jurisdiction. In particular, Equipment argues that the Court should treat the claim for equitable relief as a state claim, and exercise jurisdiction over it because it is pendent to the admiralty claims in that all the claims arise out of the same operative facts. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In Swift & Co. Packers v. Compania Colombiana Del Caribe, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950), the Supreme Court held that the admiralty court could grant equitable relief as an incident to an admiralty claim in order to secure the defendant's appearance, and to insure the fruits of a judgment in the plaintiff's favor. The maritime claim was for lost cargo. An attachment was sought against The Caribe, but the ship had been fraudulently transferred so as to prevent the attachment. The admiralty court was allowed equitable power to examine the fraudulent transfer as an incident to its admiralty jurisdiction.

The considerations in this case are different from those found by the Supreme Court in The Caribe, supra. The fraudulent transfer in The Caribe, supra, was referred to by the Supreme Court as a subsidiary or derivative issue. The injunctive relief sought here by Equipment is not a subsidiary or derivative issue. Rather, the claim of trespass is the most significant element of Equipment's counterclaim. More importantly, in The Caribe, supra, the failure to grant equitable relief would have deprived the admiralty court of the ability to administer justice; that is, to insure a money judgment in the event the owners of the vessel were found to be liable for the loss of Swift & Company's cargo. The Court, by not granting the equitable relief sought herein, will not be prevented from adjudicating Equipment's claim for monetary damages arising out of the lost wharf space.

In Beverly Hills National Bank & Trust Co. v. Compania de Navegacione Almirante S. A. Panama, 437 F.2d 301 (9th Cir. 1971), the court relied on The Caribe, supra, as authority for the assertion of pendent jurisdiction over an equitable claim for relief. A shipowner was suing for freight charges due to him. He urged two bases for recovery; an admiralty claim, and an equitable

claim. The shipowner sought to have the court find that a constructive trust existed over certain receipts held by a bank. The admiralty claim was dismissed, but the court maintained its jurisdiction because the equitable claim was found to be pendent to the admiralty claim. In *Beverly Hills, supra,* as was the case in *The Caribe, supra,* the court was faced with a situation where the plaintiff could not obtain a judgment if jurisdiction over the non-maritime claim was not retained. That is not the situation before this Court.

The doctrine of pendent jurisdiction was applied by the Supreme Court to maritime claims in "very limited circumstances" in Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S. Ct. 468, 3 L.Ed.2d 368 (1959). Before the Supreme Court considered the application of the doctrine which it denominated as pendent jurisdiction, it held that general maritime claims, although rooted in federal law, could not be brought before a federal court as a "federal" question under 28 U.S.C. § 1331 (1958).

The Second Circuit interpreting the Supreme Court's holding on federal question jurisdiction in *Romero, supra,* stated:

> The rationale of that case, as we read it, is that when a seaman suing in federal court for personal injury alleges a substantial claim only under the general maritime law as distinguished from a federal statute, he may have only such remedies as the maritime law affords. Khedivial Line, S. A. E. v. Seafarers' International Union, 278 F.2d 49, 53 (2nd Cir. 1960).

The Second Circuit held that maritime law does not afford the remedy of injunction where the complaint alleges a maritime tort. *Khedivial, supra* at 52–53. This Court is of the opinion, as was the Second Circuit in *Khedivial, supra* at 53, that the comment in 73 Harv.L. Rev. 128 at 141 (1959) is correct when it states that "properly interpreted, *Romero* makes unavailable an equitable action in a federal court to enjoin the commission of a maritime tort."

The plaintiff's claims under the general maritime law in *Romero, supra,* were found to be pendent to his Jones Act claim. However, in applying the doctrine of pendent jurisdiction the court noted that:

> Of course the considerations which call for the exercise of pendent jurisdiction of a state claim related to a pending federal cause of action within the appropriate scope of the doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, are not the same when, as here, what is involved are related claims based on the federal maritime law. We perceive no barrier to the exercise of "pendent jurisdiction" in the very limited circumstances before us. (Emphasis supplied) 358 U.S. at 380–381, 79 S.Ct. at 484.

The circumstances and considerations in this case are quite different. The Court has jurisdiction over the cause of action because it is a tort under the general maritime law. The Court is able to grant the relief that admiralty will give for such a claim. It is unnecessary, therefore, for the Court to exercise pendent jurisdiction.

 As its second and principal argument in favor of granting an injunction, Equipment contends that regardless of whether substantive admiralty law provides for injunctive relief, the merger of the rules of procedure in 1966 allows a party to assert any claim, equitable or otherwise, as part of a counterclaim under Rule 13, if the claim meets that Rule's requirements for a counterclaim.[1] The Court does not find

---

1. Equipment has brought to the attention of the Court Guillot v. Cenac Towing Co., 366 F.2d 898 (5th Cir. 1966) and Olympic Towing Corporation v. Nebel Towing Company, 419 F.2d 230 (5th Cir. 1969). It is suggested that the language in these two cases indicates that as a result of the merger of the rules, there is now broad

that this was the intention of the merger of the rules. Prior to the merger of the rules, there was very limited use of counterclaims in admiralty. One of the purposes of the merger was to allow admiralty the same liberal practice of counterclaims as enjoyed by the civil practice. Colley, Admiralty Unification, 54 Geo.L.J. 1268 (1966). The Court, by allowing Equipment to assert the counterclaim based on the maritime tort, is effectuating the purpose of the merged federal rules of civil procedure. The merger of rules did not, however, create new substantive admiralty causes of action, and this Court does not have the power to entertain an equitable action to enjoin the commission of a maritime tort. *Romero, supra.* This is the law whether the equitable action is brought as a direct complaint or in a counterclaim.

*Swift & Co., supra*, decided in 1950, is the only instance where the Supreme Court has allowed an admiralty court to grant equitable relief. Justice Frankfurter was circumspect, however, in saying how far admiralty's use of equitable power should go:

> We would be passing on situations not before us were we to attempt now to define when power which we recognize should be withheld. In the circumstances of this case the power should be exercised, for there are good reasons for the attachment. 339 U.S. 684 at 695, 70 S.Ct. 861 at 868, 94 L. Ed. 1206.

Gilmore and Black, seven years later, referred to that decision as a "doctrinal trend," and said that it remains to be seen how far the use of equitable power by an admiralty court will be extended.

Gilmore & Black, Admiralty, 37–39 (1957). Another leading admiralty authority writing nineteen years after *Swift & Co., supra*, could only say that "It remains to be seen whether the Court will in later cases find that admiralty has the power to give the equitable relief of injunction . . . ." Baer, Admiralty Law of the Supreme Court, 365 (2nd ed. 1969).

The Supreme Court has not, as yet, seen fit to extend the equitable power which it recognized in *Swift & Co., supra*. This Court feels that although there may be some uncertainty concerning the extent to which a federal district court, where jurisdiction is solely in admiralty, may grant equitable relief, as the law stands today, it is clear that this Court does not have the power to enjoin the commission of a maritime tort.

■ Even assuming that the Court did have the power to issue an injunction in an admiralty suit of this type, this Court would not exercise that power in this case. Equipment is asking the Court to issue a mandatory injunction, which is affirmative in nature and requires positive action to be taken to alter an existing condition. An injunction of this type is a harsh and drastic remedy and should not be invoked lightly. Black v. Jackson, 177 U.S. 349, 20 S.Ct. 648, 44 L.Ed. 801 (1900).

In order for a court to issue a mandatory injunction the facts must be clear and free from reasonable doubt. Fox v. City of West Palm Beach, 383 F.2d 189 (5th Cir. 1967); W. A. Mack, Inc. v. General Motors Corp., 260 F.2d 886 (7th Cir. 1958); Hotel & Restaurant Employees and Bartenders Union, Local No. 339 v. Boca Raton Club, 73 So.2d 867

injunctive power in admiralty. The cases did hold in part that an admiralty court had broad injunctive power in a limitation of liability proceeding. The use of injunctive power in these proceedings is necessary to effectuate the Congressional intent in the Limitation of Liability Act, 46 U.S.C. § 185 (1936) which has been construed as providing for the exercise

of injunctive power by admiralty courts. Gilmore & Black, Admiralty, 670–73 (1957). The Fifth Circuit was concerned, therefore, only with injunctive power granted to an admiralty court by statute. This does not mean that an admiralty court has broad injunctive power in all admiralty matters as a result of the merger of the rules.

(Fla.1964). This cannot be said of the facts in this case as the record now stands.

Equipment contends that the burned out hulk is trespassing on its wharf and that the Court should exercise its equitable powers to remove this continuing trespass, citing Lucy Webb Hayes National Training School for Deaconesses and Missionaries v. Geoghegan, 281 F. Supp. 116 (D.D.C.1967). If, therefore, the Court were to grant the requested injunction, the Court would, among other things, have to conclude that The Puerto was trespassing on Equipment's wharf. Originally, Nyon, through its agent, Riley, contracted with Equipment for the repair of The Puerto, and pursuant to such contract the vessel was moored alongside Equipment's wharf. At that point The Puerto was Equipment's invitee. Foggin v. General Guaranty Insurance Company, 250 La. 347, 195 So.2d 636, 641 (1967). Since the fire, Equipment has been instructed to make no further repairs. Thus, the circumstances surrounding the current presence of The Puerto alongside Equipment's wharf could provide the Court with sufficient factual basis for a finding that there exists a trespass. Renken v. Harvey Aluminum (Incorporated), 226 F.Supp. 169 (D.Or.1963).

However, the issue of which party is responsible for the fire which has made movement of The Puerto so difficult and hazardous is crucial to a determination of whether there exists a continuing trespass of such nature as to warrant issuance of a mandatory injunction. It would be grossly inequitable for this Court to order Nyon to remove the vessel, at great expense and extreme risk, when the chain of events which has created the present situation very well may have been put in motion by the negligent acts of Equipment. Such an order would be tantamount to deciding the principal issue in the lawsuit, that is, who is responsible for the fire, on the basis of absolutely no evidence relating to that issue.

Even if Nyon's ship is trespassing, this Court could not issue the mandatory injunction that Equipment is seeking. In order for a court to issue a mandatory injunction against a trespass, certain factors must be clearly presented to the court. These factors are the probability of irreparable injury, and the inadequacy of pecuniary compensation. Before an injunction will issue, both of these factors must be clearly presented. 1 J. High, A Treatise on the Law of Injunction, § 697, at 661 (4th ed. 1905).

There has been no conclusive showing by Equipment that it will suffer irreparable injury. Equipment argues that the irreparable injury that it will suffer is loss of good will. The only evidence that this Court has that Equipment has either lost good will, or will lose good will in the future, is a self-serving speculation by one of Equipment's corporate officers. This is not enough evidence for this Court to conclude that Equipment will suffer irreparable injury.

Equipment, likewise, has an adequate remedy at law for monetary damages. A judgment for monetary damages would provide a remedy that would adequately compensate Equipment for any loss from the temporary inaccessibility to its wharf.

Thus, this Court must conclude that a mandatory injunction is not a proper remedy in this case. Accordingly, it is ordered that the request by Equitable Equipment Company, Inc. for the issuance of a mandatory injunction is denied.