CITY OF BUFFALO, Respondent, *v.* GEORGE A. TILL, Appellant.

Fourth Department, May 5, 1920.

Municipal corporations — city of Buffalo — ordinance against assemblage in street without consent of mayor — what constitutes violation — statutory construction — general words following particular words of description — constitutional law — validity of ordinance — commencement of civil action to recover fine on arrest of defendant without issuance of process — criminal or civil action or both may be prosecuted for violation of subdivision 3 of section 5 of chapter 9 of ordinances of city of Buffalo.

The defendant violated subdivision 3 of section 5 of chapter 9 of the ordinances of the city of Buffalo which provides that "No person shall participate in any parade, gathering, assemblage or demonstration upon any street, square, park or other place within the City to which the public are invited or have access, which parade, gathering, assemblage or demonstration has not been authorized by a written permit from the Mayor," by standing on a wooden structure within the traveled portion of one of the streets of the city and addressing a large assemblage of people who surrounded him and who were within the street, without the consent of the mayor.

It was not essential to a violation of the ordinance that the defendant and the people surrounding him should have been in the traveled portion of

the street; it was sufficient that they were within the boundaries of the street.

While the general rules of statutory construction are not in all instances applicable to the construction of ordinances, they have a general application.

The general words of description, " or other place within the City to which the public are invited or have access," contained in the ordinance, following the designation of particular places, are restricted by the particular designation and include only places of the same kind, class or nature as those specifically enumerated, and they do not apply to private places in the city.

Assuming that the words " or other place within the City to which the public are invited or have access " were intended to cover private places and that such part of the provision of the ordinance was unauthorized, that fact would not invalidate the entire provision.

The common council having been clothed by the Legislature with authority to adopt ordinances not only to prevent, but also to define disorderly conduct, and to prevent disorderly assemblages, and to adopt ordinances to regulate the use of the streets and to declare in what manner and for what purpose they should not be used, had the power to enact the ordinance in question.

The reasonableness of an ordinance presents a judicial question which may be determined by the courts.

The ordinance in question was not void on the ground of unreasonableness.

The effect of the ordinance was not to give the mayor an unlimited discretion to control free speech and free assembly in Buffalo.

A civil action to recover a fine or a penalty under section 30 of chapter 9 of the ordinances of the city of Buffalo for a violation of the provisions of that chapter may be commenced by a summons or a warrant, but as the defendant was arrested by a police officer while in the act of violating the ordinance and forthwith taken before a justice of the City Court of Buffalo no process was needed and the pleadings could then be drawn and the action tried.

The provisions of the charter and of the ordinances of the city of Buffalo are sufficient in the case of a violation of subdivision 3 of section 5 of chapter 9 of the ordinances, to authorize a criminal prosecution resulting in a judgment. for imprisonment in the penitentiary or the imposition of a fine, or a civil action for the recovery of a fine or penalty.

An offender violating the said ordinance may justly be subject to a criminal and civil prosecution for the same offense, and the pendency of a criminal action is not a bar to the commencement and prosecution of a civil action and *vice versa.*

APPEAL by the defendant, George A. Till, from a judgment of the Supreme Court in favor of the plaintiff, rendered upon an ordre made at the Erie Special Term and entered in the

office of the clerk of the county of Erie on the 7th day of July, 1919, affirming a judgment of the City Court of Buffalo, rendered on the 2d day of June, 1919, determining that the defendant violated chapter 9, section 5, subdivision 3, of the ordinances of the city of Buffalo, and that for said violation he pay a fine of fifty dollars.

*Irving M. Weiss* [*Frank C. Ferguson* and *Andrew B. Gilfillan* with him on the brief], for the appellant.

*Charles S. McDonough* [*William S. Rann, Corporation Counsel,* attorney], for the respondent.

DE ANGELIS, J.:

The judgments under review are based upon provisions of the ordinances of the city of Buffalo of which the following are copies:

" No person shall participate in any parade, gathering, assemblage or demonstration upon any street, square, park or other place within the City to which the public are invited or have access, which parade, gathering, assemblage or demonstration has not been authorized by a written permit from the Mayor." (Chap. 9, § 5, subd. 3.)

" Except where a different fine or penalty is specifically prescribed, every person who shall violate any of the provisions of this chapter shall be liable to a penalty of not less than $2 nor more than $50, to be recovered in a civil action, or, upon being convicted thereof in a court of criminal jurisdiction, such person shall be subject to a fine of not less than $2 nor more than $50, and in case the person so convicted does not immediately pay such fine, he or she may be committed to the Erie County Penitentiary for the term of one day for each and every dollar of such fine unpaid. A judgment for any penalty prescribed by any of the sections of this chapter may be enforced by a body execution as provided in Section 25." (Chap. 9, § 30.)

The facts, amply sustained by the evidence, are these:

On Sunday evening, June 1, 1919, at about fifteen minutes after eight o'clock, at the junction of Main, Genesee and Huron streets, public streets of the city of Buffalo, the defend-

ant, standing upon a wooden structure within the traveled part of Main street, was in the act of addressing a large gathering or assemblage of people who surrounded him and were in the public streets of the city of Buffalo including the traveled part thereof, and when the defendant was in that act he was arrested by the police of the city and charged with a violation of chapter 9, section 5, subdivision 3, of the ordinances of the city in that a permit had not been obtained from the mayor of the city authorizing the gathering and assemblage. On the following day, after a trial in the City Court of Buffalo, that court decided that the defendant had violated that provision of the ordinances and rendered a judgment that he pay a fine of fifty dollars. This judgment having been affirmed at the Erie Special Term of the Supreme Court, the defendant appealed to this court.

There is no doubt of the fact that the defendant violated the provision of the ordinances. He was the central figure in and drew together the gathering or assemblage and, therefore, " participated " therein.

The appellant argues that neither he nor the assemblage occupied the traveled parts of the streets. The evidence is to the contrary. But, assuming that claim to be valid, the appellant admits that he and the other people constituting the assemblage were within the boundaries of the public streets, which fact, in our opinion, is an admission that he was violating the ordinances.

The validity of section 30 of chapter 9 of the ordinances is not challenged.

If any authority for subdivision 3 of section 5 of chapter 9 of the ordinances exists, it must be found in the present charter of the city of Buffalo (Laws of 1914, chap. 217, as amd. by Laws of 1916, chap. 260, and Laws of 1919, chap. 133), and in the General City Law (Consol. Laws, chap. 21 [Laws of 1909, chap. 26], as amd.). The legislation leading to the present charter will be found in Laws of 1832, chapter 179, the original act of incorporation; Laws of 1843, chapter 132, a revision of the charter; Laws of 1853, chapter 230, a revision of the charter; Laws of 1870, chapter 519, a revision of the charter; Laws of 1891, chapter 105, a revision of the charter; and the intervening amendments.

(1) In the present charter of the city of Buffalo very extensive authority is delegated to its council by the Legislature to enact ordinances as will appear in the following:

Section 10 contains this provision: " The legislative power of the city shall be vested in a board to be known and styled as ' The Council of the City of Buffalo.' "

Section 13 provides that the council shall, " in addition to the authority conferred under general laws, from time to time enact ordinances:

" (1) To define and prevent disorderly conduct; to prevent all disorderly assemblages,  *   *   *   and to punish  *   *   * disorderly persons as defined by law,  *   *   *.

" (7) To prevent  *   *   *  the incumbering of streets, alleys, wharves and public grounds;  *   *   *  to regulate the use of them, and to declare in what manner, and for what purpose they shall not be used;  *   *   *.

" (11) And such other and further ordinances not inconsistent with the laws of the State, as shall be deemed expedient for the good government of the city, the protection of its property, the preservation of peace and good order,  *   *   * the exercise of its corporate powers, and the performance of its corporate duties."

This section also provided that the ordinances of the city in force at the time the act creating the charter took effect and which were not inconsistent therewith were continued in force and effect.

Section 354, as amended by chapter 260 of the Laws of 1916, differs radically from the section as originally adopted and gives the council full authority to discontinue or alter a street or alley or any part of it.

In addition, as indicating the extensive powers designed by the Legislature to be conferred, are section 5, section 19 (added by Laws of 1913, chap. 247), section 20, subdivisions 2, 7 and 13 (added by Laws of 1913, chap. 247, the latter being the " general welfare " provision), and section 22 (added by Laws of 1913, chap. 247) of the General City Law (Consol. Laws, chap. 21; Laws of 1909, chap. 26).

(2) Much of the argument of the appellant's brief proceeds upon the claim that subdivision 3 of section 5 of article 9 of the ordinances prohibits gatherings or assemblages in *private*

*places* in the city of Buffalo and that for that reason the whole subdivision is void. This claim is based on the presence in the subdivision of the words " or other place within the City to which the public are invited or have access." In our opinion this claim is unfounded. It may be that the rules of statutory construction are not in all instances applicable to the construction of ordinances, but in reason they have general application. In this provision of the ordinances the words " or other place within the City to which the public are invited or have access " follow immediately the words " any street, square, park," and were undoubtedly intended to cover other public places over which the municipal authorities exercised control or which were owned by the municipality, like alleys, the approaches to, the corridors of and the grounds surrounding municipal buildings. These general words of description, " or other place within the City to which the public are invited or have access," following the designation of particular places, will ordinarily be presumed to be restricted by the particular designation and to include only places of the same kind, class or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose. This is an application of the rule of *ejusdem generis.* (25 R. C. L. 996.)

Assuming that the words " or other place within the City to which the public are invited or have access " were intended to cover private places and that such part of the provision of the ordinances had been unauthorized, that fact would not, in my opinion, invalidate the whole provision. Where part of a statute is invalid and the remainder valid, the valid portion of the law may stand if it is fair to assume that the Legislature would have omitted the invalid part if its attention had been called to the invalidity. (Sedg. Const. Stat. & Const. Law [2d ed.], Pom. Notes, 413; 25 R. C. L. 1002.)

An ordinance of a municipal corporation may be held in part good and in part bad and if the good part presents a complete piece of legislation it may stand. (19 R. C. L. 816.)

We do not overlook the fact that this is a penal ordinance and is for that reason subject to the rule of strict construction in favor of the defendant, but this rule does not outweigh other rules of construction and such rules must be given due consideration in a particular case.

(3) This provision of the ordinances evinces a proper exercise of the police power conferred by the Legislature upon the council. It will be noted that only section 30 and subdivision 3 of section 5 of chapter 9 of the ordinances of the city of Buffalo were put in evidence upon the trial. The whole chapter was not put in evidence. The appellant states in his brief that this chapter is denominated "Disorderly Conduct" and that section 1 of the chapter is as follows: "Disorderly conduct is defined to be the doing or commission of any of the acts prohibited in this chapter, and any person who shall do or commit any of said acts shall be guilty of disorderly conduct."

The appellant then states that the city of Buffalo could not make an act a disorderly act simply by declaring it to be such, if it were not disorderly in its real nature, and asks this court to infer that the assemblage or gathering in question was not disorderly in its real nature and that nothing made it disorderly but the failure to obtain the permit of the mayor. We do not think that this position is tenable. It already appears that the Legislature clothed the council with authority to adopt ordinances not only to prevent, but also to define disorderly conduct, and to prevent all disorderly assemblages. Authority was also conferred upon the council to adopt ordinances to regulate the use of streets and to declare in what manner and for what purpose they should not be used.

The principal office of streets of a city is to afford the public convenient passageways by means of which they may go from one place to another in the city. The usefulness and convenience of these passageways lie in the fact that they are open and unobstructed. Temporary obstructions, in the nature of things, must sometimes occur, like those caused by necessary repairs, those arising from accidents, and the like. The general rule, however, is that streets should not be obstructed. Streets are not, in their nature, the proper places for preconcerted assemblages. Such assemblages may be permissible in particular localities and at particular hours, but never without a permit from some responsible representative of the municipality in which they are about to take place, for the reason, if for no other reason, to afford the police authorities time and opportunity to arrange to police them. With

or without such a permit such assemblages are disorderly in their nature, because they tend to interfere with the right of the general public to the unobstructed use of the streets.

At the close of the plaintiff's evidence a motion was made on behalf of the defendant to dismiss the complaint and discharge the defendant upon the following grounds: That the laws of the State do not authorize the city council to enact an ordinance like that in question; that such ordinance was passed in violation of the provision of the State Constitution.* prohibiting the passage of laws to prevent a free press and free speech; that such ordinance was passed in violation of the first amendment to the United States Constitution; and that the defendant violated no law. This motion and a like motion made at the close of the evidence were denied.

The counsel for the defendant make three formal points in their brief.

It is common to the discussion in these three points that it proceeds upon the mistaken assumption that the ordinance applies to private property and private places which subject we have already discussed.

In the first point it is asserted that it is not the function of a municipality to regulate or place limitations upon the right of free speech. We have already indicated our views upon this subject.

In their second point, which is to the effect that the ordinance is unconstitutional, aside from the feature discussed in the first point, the discussion is based upon the proposition that municipal ordinances must be reasonable and if not reasonable may be declared to be invalid by the courts and that the ordinance in question is unreasonable. There is no question of the proposition that the reasonableness of an ordinance involves a judicial question and may be determined by the courts. As already indicated, we think that the ordinance is a reasonable ordinance.

In their third point the counsel for the defendant assert that the giving to the mayor of an unlimited discretion to control free speech and free assembly in Buffalo is fatal to the validity of the ordinance. We think that it would be, if that

---

* See Const. art. 1, § 8.— [REP.

were the effect of the ordinance, but we are of opinion that it does not have that effect.

Our conclusion is that the ordinance is a valid ordinance and that conclusion is amply sustained in *Davis* v. *Massachusetts* (167 U. S. 43) and in *Love* v. *Judge of Recorder's Court of Detroit* (128 Mich. 545).

The cases upon which the counsel for the defendant principally rely are *Anderson* v. *City of Wellington* (40 Kans. 173); *City of Chicago* v. *Trotter* (136 Ill. 430); *Noel* v. *People* (187 id. 587); *Mayor, etc., of Baltimore* v. *Radecke* (49 Md. 217); *Matter of Frazee* (63 Mich. 396), and *State ex rel. Garrabad* v. *Dering* (84 Wis. 585). These cases, although easily distinguishable from the case at bar, are not controlling.

Let us add that the evidence indicates that the defendant was engaged in addressing the assemblage in favor of Socialism, whatever that may mean. Assuming that he was a Socialist and was delivering an address in favor of Socialism, such fact would not affect the situation. He might have been delivering an address upon any other subject and his act would have been equally within the prohibition of the ordinance in question.

We may note in passing that this is a *civil action* for the recovery of a fine or penalty for the violation of an ordinance, pursuant to subdivisions 1 and 3 of section 15 of the charter and section 30 of chapter 9 of the ordinances. Such an action and a short form of pleading therein were provided for in the act incorporating the city (Laws of 1832, chap. 179, § 35) and have been retained in every revision of the charter (Laws of 1843, chap. 132, tit. 3, § 8; Laws of 1853, chap. 230, tit. 3, § 15, as amd. by Laws of 1855, chap. 330; Laws of 1870, chap. 519, tit. 3, §§ 13, 14; Laws of 1891, chap. 105, §§ 23, 24) and are retained in the present charter (§ 15, subd. 3).

The process by which such an action is begun, if brought in the City Court, may be a *warrant* or summons; if a summons, it must be returnable in not less than one day nor more than six days from the date of its issuance and must be served at least one day before the return day. (Charter, § 15, subd. 3.) Of course, a warrant would be returnable forthwith. The provision for the issuance of a warrant in such an action was contained in the original charter of the city and has been retained in all the succeeding revisions of and changes in the charter. Such a

warrant is known as a *civil warrant*. (See *City of Rome* v. *Foot*, 175 App. Div. 459.) The record does not show that either a warrant or summons was issued in this action, and, in view of the fact that the charter (§ 255) provides that each member of the police force has authority immediately and without process to arrest and take into custody any person who commits in the presence of such member of the police force any offense prohibited by an ordinance and that the person so arrested be taken forthwith before one of the justices of the City Court to be dealt with according to law, no process was needed in this case. The defendant being before the court under arrest, the pleadings were made and the action proceeded.

The provisions of the present charter and of the ordinances of the city of Buffalo are now sufficient, in our opinion, in the case of a violation of the provision contained in subdivision 3 of section 5 of article 9 of the ordinances, to authorize a criminal prosecution resulting in a judgment for imprisonment in the penitentiary or the imposition of a fine, or a civil action for the recovery of a fine or penalty.

The proper remedies for violations of the ordinances of the city of Buffalo under the revised charter of 1870 were considered by the General Term of the Fourth Department in *City of Buffalo* v. *Schliefer* (25 Hun, 275), and under the charter of 1891 by this court in *City of Buffalo* v. *Preston* (81 App. Div. 480), and in *People ex rel. Kane* v. *Sloane* (98 id. 450). Since then a new charter has been adopted and the ordinances have been amended. An offender now may justly be subject both to a criminal and civil prosecution for the same offense. In such a situation, the pendency of a criminal action would be no bar to the commencement and prosecution of a civil action and *vice versa*. Likewise a judgment and its satisfaction in a criminal action would be no bar to a civil action and *vice versa*. (*People* v. *Snyder*, 90 App. Div. 425.)

It follows from the foregoing that the judgment appealed from should be affirmed.

All concur.

Judgment affirmed, with costs.