**FREND et al. v. UNITED STATES.***
No. 7198.

United States Court of Appeals for the
District of Columbia.

Argued Oct. 5, 1938.

Decided Oct. 31, 1938.

*Writ of certiorari denied 59 S.Ct. 488, 83 L.Ed. ——.

Frederick A. Ballard and Howard C. Westwood, both of Washington, D. C., for appellants.

David A. Pine, U. S. Atty., and David A. Hart, Asst. U. S. Atty., both of Washington, D. C., for the United States.

Before GRONER, C. J., and MILLER and VINSON, JJ.

GRONER, C. J.

Appellants were convicted in the Police Court of the District of Columbia of the violation of a joint resolution of the Congress approved February 15, 1938.

Because of the constitutional question involved, we granted an appeal.

The resolution (52 Stat. 30, 22 U.S.C.A. §§ 255a, 255b,) makes it unlawful, within five hundred feet of an embassy, legation, or consulate in the District of Columbia to display any flag, banner, placard, or device designed or adapted to intimidate, coerce, or bring into public odium any foreign government, party, or organization, or to bring into public disrepute its political, social, or economic acts or views, or to intimidate, coerce, harass, or bring into public disrepute any diplomatic or consular representatives, or to congregate within five hundred feet of any embassy, legation, or consulate and refuse to disperse after being ordered to do so by the police authorities of the District.

The evidence abundantly shows that all four defendants flagrantly violated the terms of the resolution. At the time of the arrest, each defendant was parading in the public streets in front of the Austrian or the German embassy with a number of other persons, some of whom were carrying banners or placards inscribed with language—the repetition of which would accomplish no good purpose—intended and calculated to bring into contempt the German Government. That this congregation of people with opprobrious signs and songs in the streets in front of the embassies was a concerted, prearranged plan intended "to bring into public disrepute political, social, or economic * * * views * * * of [a] foreign government," is conclusively shown. In the circumstances, and without stopping to determine whether each of the defendants was then displaying one of the placards mentioned, we think that all are guilty under the provisions of the local law making it an offense to aid and abet in a violation of a law. D.C.Code 1929, T. 6, § 5; see Dane v. United States, 57 App.D.C. 161, 18 F.2d 811; Story v. United States, 57 App.D.C. 3, 16 F.2d 342, 53 A.L.R. 246.

It is argued, however, that, notwithstanding this, defendants should have been acquitted because the congressional resolution is unconstitutional in that it transcends congressional power and in that it abridges freedom of the press, freedom of assembly, and freedom of speech, and violates the due process clause of the Constitution. We think there is no substance to these contentions.

First. The Congress under the provisions of Art. 1, sec. 8, cl. 17, of the Constitution, U.S.C.A.Const. art. 1, § 8, cl. 17, has the power of exclusive legislation in all cases over the District of Columbia, and this power, as the Supreme Court has said, means that, as to the District, Congress possesses not only the power which belongs to it in respect to territory within a State but the power of the State as well. Keller v. Potomac Electric Power Co., 261 U.S. 428, 442, 43 S.Ct. 445, 67 L.Ed. 731. In addition, Congress has the power to "define and punish * * * Offenses against the Law of Nations," and to make all laws necessary and proper for the execution of the powers vested by the Constitution in the Government of the United States. Art. 1, sec. 8, cls. 10, 18, U.S.C.A.Const. art. 1, § 8, cls. 10, 18.

The purpose of the resolution, as stated by Senator Pittman (81 Cong.Rec., Part 8, p. 8586) in presenting it to Congress, is to protect foreign diplomats in their embassies and legations from harassment and annoyance which would bring into odium the countries they represent, and which would

nullify the inviolability of ambassadors and ministers as they are protected in every country throughout the world. "As in war the bearers of flags of truce are sacred, or else wars would be interminable, so in peace ambassadors, public ministers, and consuls, charged with friendly national intercourse, are objects of especial respect and protection, each according to the rights belonging to his rank and station."[1] The law of nations, therefore, requires every government to take all reasonable precautions to prevent the doing of the things which the resolution makes unlawful.[2] The rule arises out of the necessity of the protection of nations in their intercourse with each other, and imposes on the Government of the United States responsibility to foreign nations for all violations by the United States of their international obligations. United States v. Arjona, 120 U.S. 479, 483-485, 7 S.Ct. 628, 30 L.Ed. 728. This responsibility includes the duty of protecting the residence of an ambassador or minister against invasion as well as against any other act tending to disturb the peace or dignity of the mission or of the member of a mission.[3] It was doubtless the recognition of this obligation which induced Secretary Hull, in urging prompt passage of the resolution, to say: "If we are to obtain for our representatives in foreign countries that degree of protection to which they are entitled, we should be in a position to show a like consideration for representatives of other governments in this country. * * * By the comity of nations, representatives of foreign governments in countries where law and order are supposed to prevail are entitled to freedom from any attempted intimidation or coercion." 81 Cong.Rec., Part 8, p. 8593.

 Second. Nor do we think there is any substance in the point that the resolution violates the constitutional provisions in relation to free speech and free assembly. The reply of Senator Pittman to this contention in the debate on the adoption of the resolution is aptly expressed. He said: "* * * under the Constitution, anyone has a right to express his or her opinion, with regard to any ruler or with regard to any government, but I say that they have not the constitutional right—if prohibited by law—to make an offensive demonstration in front of an embassy or in front of a legation, the residence of a diplomat, who is our guest here, who depends on us wholly for his protection not only against murder, not only against insult, but against any character of annoyance or interference that will bring the hatred of the people of his country against our people." 81 Cong.Rec., Part 8, p. 8589.

The resolution, interpreted in the light of its purpose and according to the limitations of the Constitution, places no restriction upon speech or assembly except to the extent that they may constitute offensive public demonstrations calculated to arouse passions and resentments in those governments with which we have official relations, and then only when such offensive conduct is committed upon the public streets immediately adjacent to embassies, legations, consulates, and other buildings used for official purposes by such governments. These are reasonable and proper restrictions. In them there is no abridgement of the right of speech or of assembly or of any other constitutional right of the citizen. It has never been considered that the right in the public to use the streets is unlimited or that it may be exercised in defiance of the laws of the United States or the States. On the contrary, it has always been considered that a municipality may control and regulate the use of the streets in the general good; and this has often been held to include the preventing of loud noises, shooting of guns, assembling of crowds, and the routing of parades. The control or prohibition of any of these things cannot be regarded as interfering with the constitutional right of assembly or of speech, U.S.C.A.Const. Amend. 1. Nor is there anything in the Fifth Amendment to the Constitution, U.S.C.A.Const. Amend. 5, which invalidates this exercise of the police power in the respects mentioned.

 Third. Appellants, however, in addition to the grounds discussed, insist that

---

[1] Pres. Fillmore, Message to Congress, Dec. 2, 1851, 6 Moore, International Law Digest, 813.

[2] "The house of an ambassador ought to be safe from all outrage, being under the particular protection of the law of nations * * * to insult it, is a crime both against the state and against all other nations." Vattel's Law of Nations (Chitty, 1863), p. 494.

[3] Harvard Research Draft on "Diplomatic Privileges and Immunities," published in 26 American Journal of International Law 50.

the resolution is invalid because, in permitting the Superintendent of Police to grant permits, it establishes no standard or guide to govern that official but places on him absolute power. We do not think the resolution should be so construed. By its terms it makes it a misdemeanor to do the prohibited things, and the provision authorizing the Superintendent of Police to issue a permit must be read as authorizing its issuance subject to the prohibitions of the resolution. That is to say, that only in those cases in which its use will not harass or bring into public odium the representatives of foreign governments, does power to issue exist. This was stated to be the intent of Congress by Senator Pittman when he said: "There might be a perfectly peaceful parade down the street past an embassy, having nothing to do whatever with the embassy or the ambassador or the country which he represents." 81 Cong.Rec., Part 8, p. 8484. In such a case a permit should be granted, and in this respect the resolution fully conforms to the local police laws in relation to processions and parades, for which permits are required by Section 67 of the local Traffic Regulations, except in the case of funerals. This and other similar regulatory laws with discretion in a local official grow out of the long recognized necessity of controlling and otherwise limiting in the common weal the use of public streets, and we have held a similar regulation to be a valid exercise of the police power. La Forest v. Board of Commissioners, 67 App.D.C. 396, 92 F.2d 547; District of Columbia v. Smith, 68 App.D.C. 104, 93 F.2d 650. The authority of the Superintendent of Police in the joint resolution is fixed and qualified by these definite standards, and the right to issue the permit confers no discretion to issue it when to do so will violate those standards. The power is to effectuate the purposes of the resolution, not to thwart them.

In this respect it cannot be held to be an unlawful delegation of authority, and so we have a case not unlike that discussed by the Supreme Court in Davis v. Massachusetts, 167 U.S. 43, 17 S.Ct. 731, 42 L.Ed. 71, where an ordinance of Boston provided that "no person shall, 'in or upon any of the public grounds,' make any public address," etc., except in accordance with a permit from the mayor. There it was contended that the authority to the mayor was void because it vested in him

arbitrary power to determine when he would grant a permit. But the Supreme Court, answering this, said: "The right to absolutely exclude all right to use necessarily includes the authority to determine under what circumstances such use may be availed of, as the greater power contains the lesser. The finding of the court of last resort of the state of Massachusetts, being that no particular right was possessed by the plaintiff in error to the use of the common, is in reason, therefore, conclusive of the controversy which the record presents, entirely aside from the fact that the power conferred upon the chief executive officer of the city of Boston by the ordinance in question may be fairly claimed to be a mere administrative function vested in the mayor in order to effectuate the purpose for which the common was maintained and by which its use was regulated." Other similar cases are: Pedrick v. Bailey, 12 Gray, Mass., 161, sustaining a statute prohibiting awnings without consent of the mayor and aldermen; Commonwealth v. Abrahams, 156 Mass. 57, 30 N.E. 79, forbidding orations, harangues, etc., in a park without prior consent 'of the commissioners; Love v. Phalen, 128 Mich. 545, 87 N.W. 785, 55 L.R.A. 618, prohibiting a public address in any public place in the city within half a mile of the city hall without a license from the mayor; Fitts v. Atlanta, 121 Ga. 567, 49 S.E. 793, 67 L.R.A. 803, 104 Am.St.Rep. 167, forbidding a public meeting in the street without permission, etc.; People v. Atwell, 232 N.Y. 96, 133 N.E. 364, 25 A.L. R. 107, prohibiting meetings in the street without permit; also Buffalo v. Till, 192 App.Div. 99, 182 N.Y.S. 418; and other like cases limiting the use of streets. And see Wilson v. Eureka City, 173 U.S. 32, 19 S.Ct. 317, 43 L.Ed. 603, where the cases of this nature are collected and approved.

We think, therefore, this case does not—as is claimed—involve an unlawful delegation of power. Congress, as we have seen, has here not only the power to define and punish offenses against the law of nations, but also all the police power of a State in relation to the District of Columbia. To hold that it is powerless in the circumstances of this case, would be little less than fantastic. Possessing the power, Congress could determine for itself how and to whom it would distribute the authority to make detailed regulations. The possession of the power includes the au-

thority to determine the circumstances of its use. Davis v. Massachusetts, supra; and see La Forest v. Board of Commissioners, supra; and see also Highland Farms Dairy v. Agnew, 300 U.S. 608, 57 S.Ct. 549, 81 L.Ed. 835.

Judgments affirmed.

