Manuel **LOPES**

v.

**REEDEREI RICHARD SCHRODER**

v.

**LAVINO SHIPPING COMPANY.**

Civ. A. No. 25113.

United States District Court
E. D. Pennsylvania.

Nov. 5, 1963.

Avram G. Adler, Philadelphia, Pa., for plaintiff.

Thomas F. Mount, Philadelphia, Pa., for defendant.

Joseph R. Thompson, Philadelphia, Pa., for third-party defendant.

VAN DUSEN, District Judge.

Defendant applied at the pre-trial conference to have this action dismissed for lack of jurisdiction over the subject matter (see paragraph 2 of Pre-Trial Report, being Document 20). Argument on the point was presented by counsel in the late afternoon of October 4, 1963.

Plaintiff, an alien employed as a longshoreman and domiciled in Pennsylvania, has brought this civil action against the defendant shipowner, also an alien. Plaintiff bases jurisdiction on 28 U.S. C.A. § 1350 (hereinafter referred to as "§ 1350"), claiming that that section will support his cause of action grounded upon the unseaworthiness of defendant's vessel and defendant's negligence.

28 U.S.C.A. § 1350 provides:

"The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." [1]

---

1. This language had its origin in the Judiciary Act of 1789 and an examination of these authorities concerning the language now in § 1350 and concerning the Judiciary Act of 1789 has not been helpful in deciding the questions now before

Defendant's application to dismiss for lack of jurisdiction must be granted unless this case is transferred to the admiralty docket, since both of these questions must be answered in the negative because the words underlined below are inapplicable to this action:

(I) Is unseaworthiness a tort only, *committed in violation of the law of nations* [2] *or a treaty of the United States;* and

(II) is the negligence alleged a tort only, *committed in violation of the law of nations or a treaty of the United States?*

### I. The Doctrine of Unseaworthiness

The authorities submitted by counsel on whether unseaworthiness is a "tort only" are not conclusive, since the doctrine has many characteristics usually associated with contracts,[3] even though, historically, the action was brought as a tort action.[4] For the purpose of deciding the questions presented in this application, the court will proceed on the assumption that unseaworthiness is a "tort only," which leads to the next question, i. e., whether the "tort only" was "committed in violation of the law of nations or a treaty of the United States." [5]

 Justice Stewart traced the history of unseaworthiness in Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). After discussing the ancient rules of the sea relating to the rights of seafaring men, such as the Laws of Oleron and the Laws of Wisbuy, and their interpretation by the American courts, he continued at pp. 544–546 of 362 U.S., at pp. 930–931 of 80 S.Ct., 4 L.Ed.2d 941:

"The earliest mention of unseaworthiness in American judicial opinions appears in cases in which mariners were suing for their wages. They were required to prove the unseaworthiness of the vessel to excuse their desertion or misconduct which otherwise would result in a forfeiture of their right to wages. * * * The other route through which the concept of unseaworthiness found its way into the maritime law was via the rules covering marine insurance and the carriage of goods by sea. * * *

"Not until the late nineteenth century did there develop in American admiralty courts the doctrine that seamen had a right to recover for personal injuries beyond maintenance and cure. During that period it became generally accepted that a shipowner was liable to a mariner injured in the service of a ship as a consequence of the owner's failure to exercise due diligence. * * *

* * *

"This was the historical background behind Mr. Justice Brown's much quoted second proposition in

the court: The Scotia, 81 U.S. 170, 20 L.Ed. 822 (1871); The Lottawanna, 88 U.S. 558, 22 L.Ed. 654 (1874); 1 Stat. 73, § 39 (Judiciary Act of 1789); 36 Stat. 1091, § 17; Dickenson, Law of Nations, 101 U.Pa.L.Rev. 26,792 (1953); Kurland, Romero & Federal Jurisdiction, 73 Harv.L.Rev. 817 (1960); Warren, History of Fed. Judiciary Act of 1789, 37 Harv.L.Rev. 49 (1923). The many authorities cited in the briefs of counsel and their letters of October 21 and 23, which have been attached to those briefs, also have not been helpful on the origin and interpretation of the language in § 1350. These briefs have been docketed as Nos. 23 to 25 in the Clerk's file. See, also, footnote 13. Those cases cited in the annotations to 28 U.S.C.A. § 1350 not cited in this opinion were not helpful in deciding this question.

2. The law of nations has been defined as "the usage of all civilized nations." See United States v. Arredondo, 31 U.S. 691, 706, 711, 6 Pet. 691, 706, 711, 8 L.Ed. 547 (1832), and 1 Kent's Commentaries, 14th Ed., p. 1, fn. 1.

3. For the contract view, see Hamilton v. United States, 268 F. 15 (4th Cir. 1920); Rainey v. New York & P. S. S. Co., 216 F. 449 (9th Cir. 1914).

4. For the tort view, see Strika v. Netherlands Ministry of Traffic, 185 F.2d 555 (2nd Cir. 1950); Dawson v. Fernley & Eger, 196 F.Supp. 816 (E.D.Va.1961).

5. 28 U.S.C.A. § 1350.

The Osceola, 189 U.S. 158, 175 [23 S.Ct. 483, 487, 47 L.Ed. 760] : 'That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship.' In support of this proposition the Court's opinion noted that '[i]t will be observed in these cases that a departure has been made from the Continental codes in allowing an indemnity beyond the expense of maintenance and cure in cases arising from unseaworthiness. This departure originated in England in the Merchants' Shipping Act of 1876 * * * and in this country, in a general consensus of opinion among the Circuit and District Courts, that an exception should be made from the general principle before obtaining, in favor of seamen suffering injury through the unseaworthiness of the vessel. We are not disposed to disturb so wholesome a doctrine by any contrary decision of our own.' "

In light of this history of the doctrine of unseaworthiness, it is apparent that this doctrine was judicially created [6] by American judges who were disposed to adopt principles employed in our common law and apply them to accidents and occurrences transpiring in places where, traditionally, only admiralty remedies were available.[7] These decisions, influenced, perhaps, by the Merchants' Shipping Act of 1876 [8] and by changing American social values,[9] gave the injured seaman much more than the traditional maintenance and cure given by our early case law [10] or the ancient codes employed on the Continent and in Great Britain.

From the above history of the doctrine of unseaworthiness, the court concludes that (a) the awarding of damages for injuries occasioned by unseaworthiness of a vessel arose in American courts as a doctrine unique to this country,[11] and (b) the doctrine does not come from the law of nations nor from any treaty to which the United States is a party.

II. The negligence alleged is not a tort only, *committed in violation of the law of nations.*

What the law of nations is "may be ascertained by consulting the works of jurists, writing professedly on public laws; or by the general usage and practice of nations; or by judicial decisions recognising and enforcing that law." [12] The court's examination of the phrase "the law of nations" must consider the words used as part of an "or-

6. Gillespie v. United States Steel Corporation, 321 F.2d 518 (6th Cir. 1963).

7. See The Edith Godden, 23 F. 43 (S.D. N.Y.1885); The State of Maryland, 85 F.2d 944, 945 (4th Cir. 1936). See, also, 2 Norris, The Law of Seamen, § 653, p. 782 (2d Ed., 1962), who says: "From time immemorial men of the sea, injured or sick while in the service of the vessel * * * have been accorded aid and relief by way of medical and nursing care, subsistence and monetary recompense in the way of wages at least to the end of the voyage, but nowhere in the ancient codes or among the recognized authorities on maritime law was there any recognition under the general maritime law of the liability of the vessel or of the ship's owner for compensatory damages to the seaman for injuries suffered as a result of the negligence of the vessel owner. * * * "

8. 39 & 40 Vict. c. 80, § 5. This act modified the decision in the first English case (1854) brought by a seaman to recover damages occasioned by the unseaworthiness of a vessel. See Justice Frankfurter's comments on this Act in his dissent in Mitchell v. Trawler Racer, Inc., supra, 362 U.S. at p. 561, 80 S.Ct. at pp. 938–939, 4 L.Ed.2d 941.

9. Cf. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 59, 63 S.Ct. 444, 87 L.Ed. 610 (1943), and Kernan v. American Dredging Co., 355 U.S. 426, 428, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958).

10. Reed v. Canfield, 20 Fed.Cas. 426 (No. 11641) (C.C.Mass.1832).

11. See the discussion in Baer, Admiralty Law of the Supreme Court, p. 15 (1963).

12. United States v. Smith, 18 U.S. 71, 74 [153], 5 Wheat. 71, 74 [153], 5 L.Ed. 57 (1820).

ganic growth." See Romero v. International Term, Operating Co., 358 U.S. 354, 360, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).[13]

The judicial decisions recognizing and enforcing "the law of nations" under § 1350 do not fully explain or define. that phrase. At best, the cases arising under this section show only the connotation of "in violation of the law of nations." This phrase has been held to include acts such as the unlawful seizure of a vessel and its disposition as a prize,[14] the seizure of neutral property upon the ship of a belligerent,[15] unjustified seizure of an alien's property in a foreign country by a United States officer,[16] failure to accord comity to ships of foreign countries,[17] and concealment of a child's true nationality coupled with the wrongful inclusion of that child on another's passport.[18] The other cases arising under this section do not elucidate the meaning of this phrase.

Article I, Section 8, Clause 10, of the Constitution also contains the phrase "Law of Nations." Cases discussing this phrase have held the following to be "Offences against the Law of Nations":[19] violations of the laws of war,[20] suppression of slave trade,[21] acts tending to incriminate, coerce, harass or bring into public disrepute any diplomatic or consular representative of a foreign government,[22] and counterfeiting notes of foreign countries.[23]

The court's examination of jurists' writings on the subject started with Burlamaqui, who commented:

"There is no room to question the reality and certainty of such a law of nations obligatory to its own nature, and to which nations, or the sovereigns that rule them, ought to submit. For if God, by means of right reason, imposes certain duties between individuals, it is evident he is likewise willing that nations, which are only human societies, should observe the same duties between themselves."[24]

13. In the Romero case, supra, the court used this language:

"Abstractly stated, the problem is the ordinary task of a court to apply the words of a statute according to their proper construction. But 'proper construction' is not satisfied by taking the words as if they were self-contained phrases. So considered, the words do not yield the meaning, of the statute. The words we have to construe are not only words with a history. They express an enactment that is part of a serial, and a serial that must be related to Article III of the Constitution, the watershed of all judiciary legislation, and to the enactments which have derived from that Article. Moreover, Article III itself has its sources in history. These give content and meaning to its pithy phrases. Rationally construed, the Act of 1875 must be considered part of an organic growth—part of the evolutionary process of judiciary legislation that began September 24, 1789, and projects into the future."

14. Moxon v. Fanny, 17 Fed.Cas. 942 (No. 9895) (D.Pa.1793).

15. Blochos v. Darrell, 3 Fed.Cas. 810 (No. 1607) (D.S.C.1795).

16. O'Reilly De Camara v. Brooke, 209 U.S. 45, 28 S.Ct. 439, 52 L.Ed. 676 (1908), and the comments concerning this point in Khedivial Line, S.A.E. v. Seafarer's International Union, 278 F.2d 49, 52 (2nd Cir. 1960).

17. Khedivial case, supra, fn. 16.

18. Abdul-Rahman Omar Adra v. Clift, 195 F.Supp. 857 (D.Md.1961).

19. "§ 1158. Offences against the law of nations are quite as important, and cannot with any accuracy be said to be completely ascertained, and defined in any public code, recognized by the common consent of nations." III Story, Commentaries on the Constitution of the United States, 56 (1st Ed.1833).

20. In re Yamashita, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499 (1946).

21. Charge to Grand Jury, 30 Fed.Cas. 1026 (No. 18,269a) (C.C.Ga.1859).

22. Frend v. United States, 69 App.D.C. 281, 100 F.2d 691 (1938), cert. den. 306 U.S. 640, 59 S.Ct. 488, 83 L.Ed. 1040.

23. United States v. Arjona, 120 U.S. 479, 7 S.Ct. 628, 30 L.Ed. 728 (1887); People v. McDonnell, 80 Cal. 285, 22 P. 190 (1889).

24. 1 Burlamaqui, Natural & Political Law, p. 164 (5th Ed., 1791).

Kent defined the "Law of Nations" as "that code of public instruction which defines the rights and prescribes the duties of nations in their intercourse with each other," [25] and continued that it is "founded on the principle that different nations ought to do each other as much good in peace and as little harm in war as possible without injury to their true interest." [26] In succeeding lectures, Kent stated the rights and duties of countries, while at peace and while at war, the rights of belligerents, of neutrals, neutral trade, truces, passports, and, in the last lecture, entitled "Of Offenses Against the Law of Nations," listed four offenses under this heading: violation of passports, violation of ambassadors, piracy, and slave trade.[27]

Story traced the development of the law of nations, stating that: "It first assumed the modest form of commercial usage; it was next promulgated under the more imposing authority of royal ordinances; and finally became by silent adoption a generally connected system founded in the natural convenience and asserted by the commercial nations of Europe." [28]

██ Nothing has been found to indicate that negligence, such as is alleged in this action, was in 1789 and succeeding years, or is, customarily treated as a violation of the law of nations.

After consideration of the above authorities, the conclusion of this court is that the phrase "in violation of the law of nations," for the purpose of deciding this issue, means, *inter alia,* at least a violation by one or more individuals of those standards, rules or customs (a) affecting the relationship between states or between an individual and a foreign state, and (b) used by those states for their common good and/or in dealings *inter se.*[29] Nothing has been found to indicate that the acts or omissions described as the negligence in this Complaint would be considered as a violation of the law of nations.

██ Since the requirements of 28 U. S.C.A. § 1350 have not been met and since the requisite diversity required by 28 U.S.C.A. § 1332 is not present, the Complaint will be dismissed, unless plaintiff submits within two weeks an order to transfer this case to the admiralty docket.[30]

25. 1 Kent, Commentaries, p. 1 (1st Ed., 1826).

26. Id., pp. 1 & 2.

27. Id., Lecture IX, p. 181.

28. Story, Commentaries on the Conflict of Laws, pp. 7–8 (5th Ed., 1857). "By the law of nations, the cognizance of all captures *jure belli,* or as it is more familiarly phrased, all questions of prize, and their incidents, belongs exclusively to the courts of the country, to which the captors belong, and from whom they derive their authority to make the capture." III Story, Commentaries on the Constitution of the United States, p. 528 (1st Ed., 1833).

29. "The Law of Nations * * * may be defined as the body of rules and principles of action which are binding upon civilized states in their relations with one another." Brierly, The Law of Nations, p. 1 (6th Ed., 1963).

30. Plaintiff's suggestion that the court permit the case to remain on the jury list must also be rejected. In Fitzgerald v. United States Lines, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963), a jury trial was required on certain issues, which is not the situation in this case. Particularly in view of the congested docket of this court, no persuasive reason has been advanced by plaintiff justifying this court to exercise its discretion to grant a jury trial in this case, even assuming, which the court does not decide, that the court had the power to exercise such discretion. This language at page 20 of 374 U.S., at page 1650 of 83 S.Ct., 10 L.Ed.2d 720 of the Fitzgerald case, supra, does not justify the exercise of such discretion on this record:

"While this Court has held that the Seventh Amendment *does not require* jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them. Nor does any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases."