**Siamack ZAIMI, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 4980.

District of Columbia Court of Appeals.

Argued Oct. 6, 1969.

Decided Jan. 30, 1970.

Robert C. Maynard, Washington, D. C., with whom Ralph J. Temple, Washington, D. C., was on the brief, for appellant.

Warren R. King, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before HOOD, Chief Judge, and FICKLING and GALLAGHER, Associate Judges.

FICKLING, Associate Judge.

Appellant Siamack Zaimi and one Khosro Kalantari,[1] two Iranian nationals, were convicted of violating D.C.Code 1967, § 22–1115.[2]

While the Shah of Iran was visiting this country and temporarily staying at Blair House, the defendants below, standing on a curbing in front of the Executive Office Building within 130 feet of Blair House, yelled, in the presence of others, that the Shah of Iran had come to Washington to purchase 600 million dollars worth of bombs from the United States to be used to suppress the people of Iran, as had been done several times before, and that it was the Shah's purpose to have the United States back up the Shah of Iran and pick up the burden of Iran in order to suppress the Iranian people. There

1. Kalantari's appeal was dismissed at his request.

2. "It shall be unlawful * * * to * * * bring into public disrepute any officer * * * of any foreign govern-ment * * * within five hundred feet of any building or premises within the District of Columbia used or occupied by any foreign government or its repre-sentative * * * for * * * offi-cial purposes * * *."

was testimony, although it was denied, that Mr. Kalantari also said that the Shah was selling out his government to the United States capitalists.

■ Appellant's contention that the statute is unconstitutional is without merit; it was held valid in Frend v. United States, 69 App.D.C. 281, 100 F.2d 691 (1938), cert. denied, 306 U.S. 640, 59 S.Ct. 488, 83 L.Ed. 1040 (1939).

■ Appellant's contention that the evidence was insufficient to make out a prima facie case because there was no warning to desist before arrest, and because there was no showing that the statements were untrue or made with actual malice or that there was a threat of breach of the peace, overlooks the fact that that portion of the statute under which he was convicted does not include those elements.

■ We think it is clear from the record that appellant's statements not only brought the Shah in public disrepute but that appellant intended as much. Frend v. United States, *supra.*

Affirmed.

GALLAGHER, Associate Judge (concurring).

I concur in the decision, though I look at the case a bit differently.

In addition to his contention that the statute is unconstitutional on its face, which has been disposed of, appellant argues (a) the statute was unconstitutionally applied here, and (b) the evidence was insufficient to sustain the conviction.

In arguing unconstitutional application, appellant relies largely on Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. *1031 (1942)*; Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); and, bringing it up to date, Williams v. District of Columbia, D.C.Cir.,

419 F.2d 638 (No. 20,927, decided June 20, 1969), to support his position that since imminence of breach of the peace was lacking and not alleged the conviction was invalid under the first amendment. But that line of cases does not apply here. This statute is designed to protect the personal safety of foreign emissaries and to insulate them in their residences from annoyance and insult. *Frend, supra,* 69 App.D.C. at 282–283, 100 F.2d at 692–693. It is inappropriate, therefore, to apply the tests of those landmark first amendment cases here as appellant has sought to do. It would not comport with the rationale of this statute to require a showing of such factors as incitement to violence or threatened breach of the peace as required frequently in purely domestic free speech cases. To require things to come to such a stage prior to arrest under this statute would largely undo its clearly valid purpose of insulating foreign dignitaries from harassment and annoyance while in their residences.

Next, appellant contends there was insufficient evidence to sustain the conviction because (a) the statements made by appellant did not warrant a finding that the foreign leader (Shah of Iran) was brought into "public disrepute", (b) the Government should have been required to plead and prove that prior to arrest appellant was given a warning that his speech was in violation of the law and an opportunity to desist before arrest, and (c) the Government failed to prove the contents of appellant's speech were false or that the assertions were made with "actual malice."

Read in the light most favorable to the Government, as we must do on this appeal, the record shows that at about 12:30 p. m. of the day in question, appellant and another were across the street from the Blair House and as the Shah of Iran got into his car upon leaving Blair House, where he was residing, and the car made a U-turn to go to the White House, appellant and his companion stepped off the curb and shouted at the Shah. The police

restrained them from coming further into the street. A little later in the day, when the Shah was again scheduled to leave Blair House, appellant was directly across the street and climbed on the curb supporting the fence which surrounds the Executive Office Building. He then "shouted" to a group of about 30 people which had gathered that the Shah had come to this country to borrow 600 million dollars for arms to suppress the people of Iran; and that it was the Shah's purpose that this country "pick up the burden of Iran in order to suppress the Iranian people." The speech to this effect continued for a matter of minutes. Before the arrest, the police requested that he and his companion "cut it off" and told them such conduct within 500 feet of the Blair House was in violation of law while the Shah was in residence there. When appellant persisted in his speech, the arrest took place.

Perhaps the most difficult question in this case is whether on these facts appellant was rightly convicted. The information charged that appellant did "intimidate, coerce, harass and bring into public disrepute an officer of a foreign government." [1] This charge follows the language of the pertinent provision of the statute, though it is in the alternative and makes either of the foregoing an offense. The trial court found appellant guilty under the allegation of the complaint that he brought the Shah into "public disrepute." Appellant argues that his statements were insufficient to warrant a finding that the Shah was thereby brought into "public disrepute."

I think a reasonable interpretation of the statute simply requires that the conduct or speech be intended to bring the foreign official into "public disrepute", not that he is *actually* brought into "public disrepute." The initial portion of the statute prohibits the display of banners, placards and so forth *"designed or adapted to* intimidate, coerce, or bring into public odium any foreign government * * *."* (Emphasis added.) While the "intent" factor is not specifically continued into the later provision of the statute, with which we are here concerned, it would do violence to the purpose of the statute to construe this provision as requiring proof that a foreign official was actually "intimidated" or actually brought into "public disrepute." The sense of the statute being to protect foreign officials, not only physically, but against demonstrations in front of their residences and from annoyance, insult or interference there, it seems to me a fair reading of the statute requires a showing only of conduct (or speech) intended to bring the foreign official into "public disrepute."

I think that appellant's conduct, first running into the street shouting at the Shah in his car in front of Blair House and his subsequent diatribe, resulted in a violation of the statute. Not only was it appellant's purpose to bring the Shah into "public disrepute" but the earlier incident, if not the speech, additionally constituted harassment which is likewise prohibited.

While the trial court found the Shah was *brought* into public disrepute, it earlier described the gist of the offense as attempting to bring the foreign official into "public disrepute." Since the result was correct, no worthwhile purpose would be served in remanding on this ground. There was no dispute about what took place, that is, as to whether appellant had entered the street and shouted at the Shah and later made the statements set forth.

As to the contention that appellant was entitled to a warning and an opportunity to desist before arrest, the answer is the record shows he received this treatment.

---

1. An additional charge of congregating and refusing to disperse after an order to do so was dismissed by the trial court on the ground that two people, appellant and his codefendant, were insufficient to constitute a congregation under the statute.

Though the statute requires a refusal to disperse in the matter of congregations within 500 feet of the residence, it does not require this refusal in the remaining portions of the statute. In view of this, and given the nature of this statute, this warning prior to arrest was prudent action by the police.

Finally, the Government was not required to show appellant's statements "were untrue or something akin to actual malice." Since the burden of the statute is to avoid harassment and insults to the foreign official while in residence, it would undo the statute to require the Government to prove "untruth" or "malice." This is especially true if, as I have said, the statute does not require a showing the foreign official was actually brought into "public disrepute" but merely the purpose to do so.