**JEWISH DEFENSE LEAGUE, INC.,
et al., Plaintiffs,**

v.

**Walter WASHINGTON et al.,
Defendants.**

**Civ. A. No. 1641–72.**

United States District Court,
District of Columbia.

Sept. 8, 1972.

Raphael Perl, Silver Spring, Md., for plaintiffs.

William Schweitzer, Asst. U. S. Atty., George Masson, Asst. Corp. Counsel, Washington, D. C., for defendants.

Before WILKEY, Circuit Judge, and SMITH and RICHEY, District Judges.

**PER CURIAM:**

The only issue in this case which justified convening a three-judge court is whether the recent decision of the Supreme Court in Police Department of Chicago v. Mosley[1] calls into question the constitutionality of D.C.Code §§ 22–1115 and 22–1116. We conclude that it does not and hence deny the requested injunction and declaratory judgment.

In a thorough and analytical opinion of the predecessor statute by Chief Judge Groner, joined by Judges Miller and Vinson, the United States Court of Appeals held the restrictions applying within 500 feet of a foreign embassy valid. Frend et al. v. United States.[2] Two years ago the present statute was applied to deny a similarly sought injunction to permit a demonstration in front of the Soviet Embassy in Jews for Urban Justice et al. v. Wilson,[3] on the authority of *Frend,* which remains the law in this jurisdiction.

*Mosley* did not change it. *Mosley* held unconstitutional a municipal ordinance prohibiting all picketing within 150 feet of a school, *except* peaceful picketing of any school involved in a labor dispute. The prohibition, fatally weakened by the exception, was held violative of the Equal Protection Clause of the Fourteenth Amendment since it made an im-

---

1. 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

2. 69 U.S.App.D.C. 281, 100 F.2d 691 (1938).

3. 311 F.Supp. 1158 (D.D.C. 1970).

permissible distinction between peaceful labor picketing and other peaceful picketing. Petitioners urge upon us here the Equal Protection Clause of the Fifth Amendment. *Mosley* and the case at bar differ.

1. The paramount governmental interest here, which is relied on to justify the *partial* restriction on First Amendment rights involved (petitioners are restricted only within a radius of 500 feet of the Embassy, beyond 500 feet there is no restriction by the statute in question), is the obligation of the United States to protect the persons and property of the diplomatic and consular representatives of a foreign State. That obligation is undisputed in international law, and the statute here was passed pursuant to Congress' power to "define and punish . . . offenses against the Law of Nations . . . " [4] This is not only an obligation of the United States, but it is subject to enforcement by foreign States under principles of comity and reciprocity—or denial thereof. We are dealing with a governmental interest of a higher quantum than that involved in *Mosley*, where the municipal ordinance was aimed at preventing the classes of school children from being disturbed by picketing.

2. The ordinance in *Mosley* was aimed at picketing only. The Supreme Court found no distinction, at least in the effect on school children, between types of peaceful picketing, and that was the vice of the municipal ordinance.

Therefore, under the Equal Protection Clause, Chicago may not maintain that other picketing disrupts the school unless that picketing is clearly more disruptive than the picketing Chicago already permits . . .

If peaceful labor picketing is permitted, there is no justification for prohibiting all nonlabor picketing, both peaceful and nonpeaceful. "Peaceful" labor picketing, however the term "peaceful" is defined, is obviously no more disruptive than "peaceful" nonlabor picketing.[5]

Here the Congressional Act only forbids certain types of activity designed to "intimidate, coerce, or bring into public odium" or "harass" or "bring into public disrepute" [6] the foreign State, its representatives or its policies.

There is an obvious distinction to be made between this type of activity forbidden by the statute and the picketing incident to a bona fide labor dispute over construction work.[7] Congress may very

---

4. U.S.Const., Art. 1, § 8, cl. 10.

5. Police Dept. of Chicago v. Mosley, 408 U.S. p. 100, 92 S.Ct. p. 2292.

6. § 22–1115. *Interference with foreign diplomatic and consular offices, officers, and property.*
    It shall be unlawful to display any flag, banner, placard, or device designed or adapted to intimidate, coerce, or bring into public odium any foreign government, party, or organization, or any officer or officers thereof, or to bring into public disrepute political, social, or economic acts, views, or purposes of any foreign government, party, or organization, or to intimidate, coerce, harass, or bring into public disrepute any officer or officers or diplomatic or consular representatives of any foreign government, or to interfere with the free and safe pursuit of the duties of any diplomatic or consular representatives of any foreign government, within five hundred feet of

any building or premises within the District of Columbia used or occupied by any foreign government or its representative or representatives as an embassy, legation, consulate or for other official purposes, except by, and in accordance with, a permit issued by the superintendent of police of the said District; or to congregate within five hundred feet of any such building or premises, and refuse to disperse after having been ordered so to do by the police authorities of the said District. (Feb. 15, 1938, 52 Stat. 30, ch. 29, § 10.)

7. § 22–1116. *Penalties for interference with foreign diplomatic and consular offices, officers, and property.*
    The District of Columbia Court of General Sessions shall have jurisdiction of offenses committed in violation of section 22–1115, and any person convicted of violating any of the provisions of said section shall be punished by a fine not

well have thought that such labor picketing would not have the disturbing impact on the foreign State or its representatives against which the statute is designed to protect.[8] Such a construction dispute and picketing relating thereto might very well be aimed, not at the embassy or at its personnel, but at the contractor doing the construction or repair work. A labor dispute is by its nature a *domestic one*, involving labor or business questions which the public takes as a fact of everyday commercial life. The petitioners here seek to bring into question the policies of the Soviet government in the Soviet Union, something which they are free to do 501 feet away from the embassy, but not by a street demonstration face to face with the Soviet diplomatic representative, for reasons discussed under point 1 above.

3. While the Supreme Court struck down the Chicago municipal ordinance in toto, and even if the labor picketing exemption in the Chicago ordinance and the D.C. statute proviso be considered indistinguishable, (we consider they are distinguishable, *supra*), it does not follow that we should strike down D.C.Code 22, sections 1115 and 1116, here. We know of nothing to indicate that Congress would have preferred to void section 1115, and thus dispense with all domestic legislation carrying out this particular international obligation, if the labor picketing proviso could not be constitutionally sustained. Rather the presumption is the other way; if one portion of a statute is invalid, it is the invalid part, not the overall statute, which is to be stricken, if the parts are separable without doing violence to the intent of Congress. If forced to a choice, to which we do not think *Mosley* directs us, our inclination would be to declare void the proviso of section 1116 and sustain section 1115. For reasons stated above, we need not rest our decision on this ground.

■ Since petitioners are seeking a preliminary injunction, the question of irreparable injury is necessarily before us.[9] We fail to see irreparable injury to petitioners if their actions calling attention to the plight of Soviet Jews must take place over 500 feet away from the Soviet embassy. On the contrary, we find the United States might suffer irreparable injury. Previous demonstrations in front of Soviet missions in Washington and New York similar to the one projected here have been followed by notes of protest by the Soviet government to our own. It is not enough that, if these demonstrations result in offenses, the offenders were subsequently punished; the obligation of the United States is to protect the foreign governments and their representatives from the type actions listed in section 1115. For this reason an injunction forbidding the enforcement of this statute, designed to prevent such actions from occurring, would be singularly inappropriate and unjustified.

---

8. Not all activity within the 500 ft. radius is banned. To some extent the wording, "Provided, however", indicates that Congress was not attempting to describe all permitted activity, but merely making sure that labor picketing in a construction dispute would not be misconstrued to fall within the prohibition.

exceeding $100 or by imprisonment not exceeding sixty days, or both: *Provided, however*, That nothing contained in said section shall be construed to prohibit picketing, as a result of bona fide labor disputes regarding the alteration, repair, or construction of either buildings or premises occupied, for business purposes, wholly or in part, by representatives of foreign governments. (Feb. 15, 1938, 52 Stat. 30, ch. 29, § 2; Apr. 1, 1942, 56 Stat. 190, ch. 207, § 1; July 8, 1963, 77 Stat. 77, Pub.L. 88–60, § 1.)

9. Virginia Petroleum Jobbers Assoc. v. F.P.C., 104 U.S.App.D.C. 106, 259 F.2d 921 (1958).